## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| WILMOT MOUNTAIN, INC., <br><br> Plaintiff, <br><br> v. <br><br> LAKE COUNTY FOREST PRESERVE DISTRICT, <br><br> Defendant. | Case No. _____ |

## COMPLAINT

The Plaintiff, WILMOT MOUNTAIN, INC. ("Wilmot"), by and through its attorneys, Karbal, Cohen, Economou, Silk & Dunne, LLC, for its Complaint against the Defendant, LAKE COUNTY FOREST PRESERVE DISTRICT (the "District"), alleges as follows:

## PARTIES

1. Plaintiff, Wilmot Mountain, Inc., is a Wisconsin corporation with its principal place of business located at 11901 Fox River Road, Wilmot, Wisconsin 53192.

2. Defendant, Lake County Forest Preserve District, is an Illinois municipal corporation established under the laws of Illinois with its principal place of business located at 2000 North Milwaukee Avenue, Libertyville, Illinois 60048.

## VENUE & JURISDICTION

3. This Court has jurisdiction over the subject matter of this case pursuant to 28 U.S.C. § 2201 and 28 U.S.C. § 1332(a) because the amount in controversy on claims herein exceeds $75,000 and there is complete diversity between the parties to this action.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because circumstances giving rise to the claims alleged herein occurred substantially in this judicial

district and division. Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(a) because one or more of Defendants is subject to personal jurisdiction in this district.

## BACKGROUND

5. Wilmot is a ski lodge located in Kenosha County, Wisconsin. Wilmot's property is approximately 356 acres. Its southern border is the Wisconsin/Illinois state boundary line. Eight (8) ski lifts and associate runs from several different hills are located on the Wilmot property. A primary ski run comes off of a 200 foot-high hill located very near the southern edge of the Wilmot property (the "South Run").

6. Wilmot has operated as a ski are for over 73 years, first opening in 1938.

7. The property immediately over the boundary of the Wilmot property is in Illinois.

8. That property is currently owned by the District.

9. The District purchased its property in approximately 1979. This matter addresses an approximately 20 x 120 foot sliver of property located near the boundary of the parties' respective properties (the "Disputed Property").

10. The District is a municipal entity connected to Lake County. The Disputed Property at issue herein may be, in full or in part, located in Illinois, and thus within the District's property. The District's property was previously owned by a private citizen.

11. Prior to its ownership, the District's property was rented to a businessman who operated a ski hill similar to Wilmot's on the District property starting in approximately the mid 1960s. That ski area operation did not succeed and ended in the late 1960s or early 1970s. Wilmot was then the only local ski area available to Lake County residents, and those residents currently account for at least 60% of Wilmot's customers.

12. When the District purchased its property, the buildings and structures that had been previously installed to operate the ski run were still in place. This included an approximately 50 x 100 foot ski lodge structure.

13. The District took steps to demolish and remove the former ski lodge by engaging Wilmot to assist it.

14. In the spring of the year it purchased the property, District representatives met with representatives of Wilmot regarding removal of the former ski lodge building. Because of the location of the ski lodge building, accessing it from the Wisconsin side of the boundary through the Wilmot property was much easier than otherwise. Likewise, it was determined that hauling the rubble and demolition debris off the site through the Wilmot property would be much easier.

15. During several communications between the parties it was determined that hauling the demolition debris and rubble to the base of the existing South Run hill would be a much shorter, and thus relatively less expensive, approach than hauling the materials off site.

16. Wilmot agreed to allow the debris to be deposited at the southern base (or foot) of its South Run hill. Wilmot also agreed to assist the District in doing the work necessary to (i) complete demolition of the ski lodge and other structures. Wilmot also agreed to cover the excavation with clean fill and haul the demolition debris to the base of its South Run hill. Wilmot excavated clean fill taken from elsewhere on the Wilmot property and deposited the fill on top of the debris.

17. In exchange, Wilmot would use the extra flat area created at the top of the South Run hill as part of the ascent to the South Run hill.

18. After this agreement was reached in the spring or summer of 1979 or 1980, Wilmot used approximately four (4) men and several pieces of equipment, including a Case dump truck and a medium-sized backhoe to complete the demolition, hauling activities at the former ski lodge location and the base of the South Run hill.

19. The debris was hauled to the southern base of the South Run hill to a location close to the boundary of the two properties. Thereafter, Wilmot borrowed (meaning excavated) several hundred yards of dirt and fill from other locations on Wilmot's property and hauled it to the pile of debris. The fill was placed over the debris in the location between the existing top of the South Run hill and the southern foot or base where the debris pile was located. This resulted in the creation of a relatively flat area at the top of the South Run hill that before had been a sloped area heading towards the District property. Wilmot was not paid any money by the District for this work.

20. The new flat area formed an approximately 20 x 120 foot strip adjacent to the top of the South Run hill. The new land area effectively expanded the top of the South Run hill to a certain extent and because of that, allowed better and safer use of the South Run hill. This was because the new land area allowed for skiers ascending the hill to have a place to wait in line for their turn to ski without hindering other skiers or being in danger from descending skiers.

21. At the time it was being constructed and upon completion, Wilmot and the District understood that the new flat area may be close to the borders of their respective properties.

22. Upon information and belief, the District understood and agreed through its representatives at the time that Wilmot could utilize the new flat area even if it minimally encroached on the District's property.

23. Wilmot thereafter constructed a fence on what it believed was the state line.

24. The District also built a "post and rope" fence south of the Wilmot fence. Wilmot assisted the District with construction of that fence by giving the District an old ski tow line to be used as the rope between the posts on the fence.

25. During the period after the completion of the filling operation and construction of the fences in approximately 1979 or 1980, no one from the District either confirmed the District's agreement described above or took legal action to block Wilmot's use of any territory within the District's property. This continued from 1980 to 2010 or approximately 30 years.

26. In 2010, the District notified Wilmot that it would be required to move Wilmot's fence, which Wilmot had constructed at the top of the ski hill, because the District asserted that the fence was on District property. The District also explained that it would be installing a new fence further into the Wilmot ski area based on an aerial map used by the District to establish property boundary lines. The District stated that its aerial map showed the Wilmot fence line was encroaching on its property and that Wilmot must agree to remove the fence and stop using the 20 foot strip of property, allegedly belonging to the District.

27. Wilmot has objected to this demand because it believes it has obtained a right to the use of the narrow strip of property which the District now asserts it owns. Wilmot believes that it has operated and used the disputed strip of property pursuant to the parties' long standing agreement that allowed Wilmot to do so.

### FIRST CLAIM FOR RELIEF
(Breach of Contract)

28. Plaintiff incorporates by reference all allegations above as though fully set forth in this claim for relief.

29. Wilmot and the District agreed in approximately 1979 or 1980 that if Wilmot did the work to cover the District's construction and demolition of an abandoned ski lodge, the District would allow Wilmot to use any territory within the District's property created by the fill material placed adjacent to the South Hill run ski hill for as long as Wilmot operated the ski lodge.

30. As of undersigned date, the District has declared that there is no agreement and there was never any permission given to Wilmot to use the disputed territory and that it is seeking to eject Wilmot from the disputed territory covered by the asserted agreement between the parties.

31. The District's actions breach a contract between the parties and such a breach will cause Wilmot to lose the use of territory that it has long used as part of its ski hill.

32. In addition, Wilmot will suffer consequential damages if its South Hill run is altered by the proposed District fence in an amount well in excess of $75,000 and in a specific amount to be proven at trial.

**SECOND CLAIM FOR RELIEF**
**(Unjust Enrichment/Equitable Estoppel)**

33. Plaintiff incorporates by reference all allegations above as though fully set forth in this claim for relief.

34. The District did and has continued to benefit from the work done, time and services provided, and resources expended by Wilmot, including, but not limited to, Wilmot's demolition and hauling of debris and thereafter the use of its own fill material to cover that debris with fill, which created the disputed territory at issue in this matter.

35. It would be inequitable for the District to stop Wilmot from using the small area created, which Wilmot has been using to absolutely no cognizable injury to anyone for 30 years.

Such action by the District if allowed will provide no material benefit to anyone wanting to engage in any recreational or nature activities for which the District is established and will only harm Wilmot and the users of its ski hill, which as noted above includes thousands of Lake County, Illinois residents each year.

36. The District is liable to Wilmot for the reasonable value of the services and materials provided by Wilmot in assisting the District in disposing of its demolition debris. Wilmot spent substantial time and man hours to create the disputed land area in order to assist the District.

37. While Wilmot has used the resulting territory for approximately 30 years, the value provided by Wilmot to the District exceeds what the reasonable rent would have been for Wilmot had it been required to pay rent for the disputed territory for the last 30 years in an amount to be proven.

## THIRD CLAIM FOR RELIEF
### (Prescriptive Easement)

38. Plaintiff incorporates by reference all allegations above as though fully set forth in this claim for relief.

39. Wilmot has made use of the disputed territory including any area actually located within the District's boundaries for approximately 30 years, which is well in excess of the 15 years required to obtain a prescriptive easement under Illinois law.

40. Wilmot's use of any property owned by the District has been continuous, uninterrupted, open, and adverse to the District, and used with the District's knowledge and under a claim of right during the last 30 years. According to the District, the use has been carried out without the District's permission.

41. It would be inequitable to eject Wilmot from continued use of the 20 foot wide strip should any portion of that strip be owned by the District. Pursuant to the law of prescriptive easement, Wilmot has obtained a right to the continued use of the disputed territory as a prescriptive easement in its favor.

**WHEREFORE**, Plaintiff, Wilmot Mountain, Inc., requests the following relief:

(a) An order of specific performance that Wilmot be permitted to continue to use the disputed territory;

(b) In the alternative to (a) an award of consequential damages that will be incurred by Wilmot if the disputed territory is no longer available to Wilmot;

(c) In the alternative, an award of damages sufficient to compensate Wilmot for the value it has provided to the District, and/or the costs it has incurred, in conducting the demolition, hauling, and filling activities to eliminate the former ski lodge and in creating the disputed territory;

(d) A declaration that Wilmot has obtained a prescriptive easement across and over the disputed territory for its benefit and that Wilmot is allowed to a reasonable continuing use of the territory consistent with its past 30 years of use;

(e) Costs and reasonable attorneys' fees pursuant to applicable law; and

(e) Such other relief as this Court deems just and equitable.

## JURY DEMAND

Plaintiff, Wilmot Mountain, Inc., hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable

Dated: October 7, 2011

                                      Respectfully submitted,

                                      WILMOT MOUNTAIN, INC.

                                      By:   s:/Edward F. Dunne
                                                One of Their Attorneys

Edward F. Dunne
Linda J. Carwile
KARBAL, COHEN, ECONOMOU,
SILK & DUNNE, LLC
150 South Wacker Drive, Suite 1700
Chicago, Illinois 60606
Telephone:  (312) 431-3700
Facsimile:   (312) 431-3670