IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WILMOT MOUNTAIN, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 11 C 7088 |
| ) | |
| LAKE COUNTY FOREST PRESERVE ) | |
| DISTRICT, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Wilmot Mountain, Inc. has sued the Lake County Forest Preserve District over a disputed parcel of land that lies on the boundary between their respective properties. Wilmot believes it has a superior right to use the land and has asserted claims for breach of contract, equitable estoppel, unjust enrichment, and prescriptive easement. The District has moved to dismiss all of Wilmot's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, the Court grants the motion in part and denies it in part.

### Background

The Court takes the following factual allegations from Wilmot's complaint and accepts them as true for purposes of the motion to dismiss. *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

Wilmot operates a ski lodge and several ski runs in Kenosha County, Wisconsin. The southern boundary of its property is the Illinois/Wisconsin state line. The property

on the Illinois side of the border formerly belonged to a private landholder who operated a ski hill like Wilmot's in the 1960s and 1970s. In or around 1979, the landholder closed the ski hill and sold the property to the District. When the District obtained the property, several buildings associated with the failed ski hill remained, including a ski lodge. The District wanted to remove these buildings.

Because the ski lodge was located close to the Wisconsin border and was more easily accessed from Wilmot's property, representatives of the District arranged for Wilmot personnel to demolish the structure and haul the resulting debris onto Wilmot's property. After dismantling the lodge, Wilmot's workers placed the debris near the top of Wilmot's South Run hill, which is next to the boundary between the properties. The workers then covered the debris with dirt and "fill," creating a relatively flat area that measures approximately twenty feet by 120 feet. This area is the subject of this lawsuit.

Wilmot claims that when it agreed to demolish the ski lodge, it was told that "[i]n exchange, [it] would use the extra flat area created at the top of the South Run hill as part of the ascent to the South Run hill." Compl. ¶ 17. Wilmot claims further that "the District understood and agreed through its representatives at the time that Wilmot could utilize the new flat area even if it minimally encroached on the District's property." *Id*. ¶ 22.

Wilmot believed at the time, however, that the newly created area lay entirely within Wisconsin, and it constructed a fence around the area, on what it believed to be the state line. It used the area without incident for approximately thirty years as a place "for skiers ascending the hill to have a place to wait in line for their turn to ski without hindering other skiers or being in danger from descending skiers." *Id*. ¶ 20.

In 2010, the District notified Wilmot that, pursuant to an aerial map, it believed that the disputed area was actually in Illinois and therefore part of District property. It asked Wilmot to remove the fence and vacate the area. In response, Wilmot filed this lawsuit, in which it seeks to establish that it has a right to continue to use the disputed area.

## Discussion

On a motion to dismiss under Rule 12(b)(6), the Court accepts the facts stated in the complaint as true and draws reasonable inferences in favor of the plaintiff. *Virnich*, 664 F.3d at 212. To survive the motion, the complaint must include enough facts to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949.

### A. Breach of contract

In count one of its complaint, Wilmot claims that the District's ejectment of Wilmot from the disputed area will "breach a contract between the parties." Compl. ¶ 31. The District argues that this claim fails because the District lacks the statutory authority to grant the contractual rights that Wilmot asserts and that any contract allowing Wilmot its claimed use would be unenforceable under the Illinois Constitution.

The District is a "special district" under Article VII § 1 of the Illinois Constitution. As such, it "exercise[s] . . . powers in respect to limited governmental subjects [and] shall have only powers granted by law." Ill. Const. art. VII § 8. Wilmot identifies two provisions of the Downstate Forest Preserve District Act, which sets out the

3

responsibilities and organizational structures of forest preserve districts, as providing the District's alleged power to contract in this case. First,

> the board of any Forest Preserve District organized under this Act may by ordinance issue licenses for any activity reasonably connected with the purpose for which the Forest Preserve District has been created, except that in counties with between 500,000 and 750,000 inhabitants, the ordinance shall be approved by a two-thirds vote of the members elected.

70 ILCS 805/7b. Second, a forest preserve district "shall be construed in all courts to be a body corporate and politic by the name and style determined as aforesaid and by such name may sue and be sued, contract and be contracted with, [and] acquire and hold real and personal estate necessary for its corporate purposes." 70 ILCS 805/3a.[1]

The District points out that even if its representatives purported to issue Wilmot a license to use the disputed area, they could not properly have done so under the Act without the passage of an ordinance by the District's board. Illinois courts have relied on similar provisions in laws governing municipalities and park districts when invalidating bargains entered by those institutions. *See, e.g.*, *Bank of Pawnee v. Joslin*, 166 Ill. App. 3d 927, 940, 521 N.E.2d 1177, 1186 (1988); *D.C. Consulting Eng'rs v. Batavia Park Dist.*, 143 Ill. App. 3d 60, 63, 492 N.E.2d 1000, 1003 (1986) ("In this case, there was no evidence that the park district board had voted to authorize such an expenditure. Thus, [a district representative] could not legally bind the district.").

Wilmot does not appear to dispute that a license to use the disputed area would be invalid unless it was granted through the passage of an ordinance. Nor does Wilmot

---

[1] Wilmot also cites provisions of the Act empowering the District to sell land and trade one parcel of land for another, but it does not allege that the District took either of those actions in this case.

allege that such an ordinance exists. Instead, Wilmot contends that "[r]esearch into the District's records may well show the details of the parties' interactions and reveal that an ordinance was considered and passed. For now the complaint is properly read as providing for the exchange agreement and the ordinance passing it." Pl.'s Resp. at 10.

The Court agrees with the District that Wilmot's complaint, which contains no mention of an ordinance, does not contain "'allegations plausibly suggesting (not merely consistent with)' an entitlement to relief." *McCauley v. City of Chicago*, __ F.3d __, No 09-3561, 2011 WL 4975644, at *4 (7th Cir. Oct 20, 2011) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). The Seventh Circuit "ha[s] interpreted *Twombly* and *Iqbal* to require the plaintiff to provide some specific facts to support the legal claims asserted in the complaint." *Id*. (internal quotation marks and citation omitted). Wilmot does not allege in its complaint either that the District issued a license or that it passed an ordinance of any kind regarding the disputed area. Wilmot's license argument therefore fails based on the complaint as it now stands.

The District contends that the absence of an ordinance is fatal to all of Wilmot's contract-based arguments, but this fails to account for the second provision that Wilmot cites. Section 3a of the Forest Preserve District Act, which establishes that a district may "contract and be contracted with," nowhere requires the District to pass an ordinance in order to enter into a contract. The District maintains, however, that any contractual right that Wilmot possessed to use the disputed area would violate the Illinois Constitution, which establishes that "public funds, property or credit shall be used only for public purposes." Ill. Const. art. VIII § 1(a). Although "units of local government can lend their credit and resources to private entities so long as a public purpose is

5

thereby served, it is clear that public funds and property cannot be devoted to a purely private purpose." *O'Fallon Dev. Co. v. City of O'Fallon*, 43 Ill. App. 3d 348, 354, 356 N.E.2d 1293, 1299 (1976). According to the District, "Wilmot's claimed right to fence off and control District land year-round for the operation of its business" impermissibly "converts publicly controlled land to privately controlled land." Def.'s Reply at 8-9.

Wilmot makes essentially three arguments for why the alleged contract does not violate the Illinois Constitution. First, it argues that the District's conveyance to Wilmot of use rights for the disputed area was consistent with its obligation to act for a public purpose because Wilmot performed demolition and hauling services in return, benefitting the public by restoring forest land. Next, Wilmot says that its fence is not a "foreboding prison wall barrier" and that it "has not prevented others from accessing the property via the Wisconsin side or overland through the woods." Pl.'s Resp. at 9. Finally, Wilmot contends that using the disputed area to facilitate skiing constitutes a public purpose in itself, especially given that, according to the complaint, a majority of Wilmot's patrons come from Lake County.

Wilmot also relies on *E&E Hauling, Inc. v. Forest Preserve Dist. of Du Page County*, 613 F.2d 675 (7th Cir. 1980), which considered whether a forest preserve district's cancellation of a contract to maintain an onsite landfill violated the contracts clause of the United States Constitution. Wilmot argues that "[i]t seems unlikely that the Seventh Circuit would have taken up the constitutional question had there been a state law barrier to the contract in the first instance." Pl.'s Resp. at 6. This case does not help Wilmot, however, because it analyzed only the federal constitutional issue, not the arrangement's permissibility under Illinois law, and the parties agreed that their contract

6

was otherwise valid.

Wilmot's argument that the alleged bargain satisfied the state constitution's public purpose requirement because the use rights were given as consideration for Wilmot's demolition and hauling is similarly unavailing. The Illinois Constitution mandates that "public . . . property . . . *shall be used* only for public purposes." Ill. Const. art. VIII § 1(a) (emphasis added). The fact that the District might have granted a right to access the disputed area in exchange for some public benefit has no bearing on whether the area is currently being used for a public purpose.

Allowing some degree of public access to the disputed area does not by itself make Wilmot's use of the area use for a public purpose. The primary purpose of Wilmot's use of the area, as alleged in its complaint, is to facilitate its customers' use of its ski hill. In short, this is not a case in which "the attempted use of the municipal property subserves the public interest and benefits a private individual or corporation only incidentally." *See O'Fallon*, 43 Ill. App. 3d at 355, 356 N.E.2d at 1299. Instead, Wilmot seeks to benefit its business and asserts only that this does not eliminate the public's ability to access the disputed area.

Both parties cite *Friends of the Parks v. Chicago Park Dist.*, 203 Ill. 2d 312, 786 N.E.2d 161 (2003), in which the Illinois Supreme Court held that a law granting the Chicago Bears exclusive use of Soldier Field on a small number of days each year did not violate the state constitution. In exchange for access, the Bears agreed to fund various public improvements in the area. Wilmot's claimed rights differ from those at issue in *Friends of the Parks* in several important respects. First, as the Court has indicated, Wilmot's claimed right is significantly more exclusive of the public than that of

7

the Bears.

More to the point, using an area of forest preserve property to benefit an out-of-state business, even one patronized by county residents, is clearly distinguishable from allowing a sports team to play on a few dates in a stadium the public still can access for a majority of the year. Although *Friends of the Parks* involved a private party using public property for its business, the Illinois Supreme Court found that a "financial benefit accruing to the Bears, standing alone, does not diminish the fact that the renovated Soldier Field will be used and enjoyed by the public for a wide variety of public purposes, whether or not the projected positive effects on jobs and the local economy generally result as predicted by the legislature." *Id*. at 325, 786 N.E.2d at 169. Such is not the case here.

By contrast, Wilmot contends only that its use will not eliminate all public benefits created by the area, not that it will independently create any public benefits (other than allowing members of the public to patronize its ski area). Moreover, *Friends of the Parks* involved a specific finding by the Illinois legislature that the Bears' use of the stadium and the accompanying deal would serve a public purpose. No similar finding exists here. The Court therefore concludes that even if the District had the statutory power to enter the alleged contract, the contract would fail under the Illinois Constitution because Wilmot's use is "a private venture designed to result not in a public use, but in private profits." *See Sw. Ill. Dev. Auth. v. Nat'l City Envtl., LLC*, 199 Ill. 2d 225, 238-39, 768 N.E.2d 1, 9 (2002).

For these reasons, the Court dismisses count one.

**B.    Count two – equitable estoppel and unjust enrichment**

In count two of its complaint, Wilmot asserts a claim of equitable estoppel, arguing that it would be inequitable to deny Wilmot the use rights it was promised. Under Illinois law, equitable estoppel may apply against a municipality where a party's "action was induced by the conduct of municipal officers [and] in the absence of such relief he would suffer a substantial loss and the municipality would be permitted to stultify itself (that is, unfairly assert its own incapacity to act) by retracting what its agents had done." *Patrick Eng'g, Inc. v. City of Naperville*, __ Ill. App. 3d __, 955 N.E.2d 1273, 1285 (Sept. 9, 2011) (internal quotation marks and citation omitted).

Wilmot also asserts in the alternative that if the deal in which the District allowed Wilmot to use the disputed area in exchange for demolition and hauling services cannot be enforced, it is entitled to recover under a theory of unjust enrichment. "Unjust enrichment is an equitable remedy that lies where a defendant has unjustly retained a benefit to the plaintiff's detriment [in a manner that] violates the fundamental principles of justice, equity, and good conscience." *Hess v. Kanoski & Assocs.*, 668 F.3d 446, 455 (7th Cir. 2012) (internal quotation marks and citation omitted).

The District cites *D.C. Consulting* for the proposition that "when an employee of a municipal corporation purports to bind the corporation by contract without prior approval, in violation of an applicable statute, such a contract is utterly void." *D.C. Consulting*, 143 Ill. App. 3d 60, 63, 492 N.E.2d 1000, 1002. As later described in *Patrick Engineering*, *D.C. Consulting* is one of "a number of appellate decisions" holding "that equitable estoppel does not apply to a municipality where the agent whose affirmative acts form the basis for the estoppel was not explicitly authorized to perform those acts."

9

*Patrick Eng'g*, 955 N.E.2d at 1287. Thus, according to the District, Wilmot's inability to point to an ordinance authorizing its use of the disputed area dooms its equitable estoppel claim for the same reasons that it dooms the breach of contract claim.

    *Patrick Engineering* is not as supportive of the District's argument as the District contends: the court criticizes the holdings of *D.C. Consulting* and related cases for adding a "formal authority" requirement for equitable estoppel that is "contrary to the holding" of an Illinois Supreme Court case stating that "a plaintiff could invoke equitable estoppel as an exception to the general rule that a municipality cannot be estopped by an agent's unauthorized acts." *Id*. (citing *Cities Service Oil Co. v. City of Des Plaines*, 21 Ill. 2d 157, 161, 171 N.E.2d 605, 608 (1961)). Wilmot also argues that, like the bargain upheld in *Patrick Engineering*, the promise it seeks to enforce was one in which the District "ha[d] the power to enter the contract, but where a portion thereof may be beyond its power, or its power may have been irregularly exercised." *Id*. at 1286 (quoting *Stahelin v. Bd. of Educ., Sch. Dist. No. 4*, 87 Ill. App. 2d 28, 41-42, 230 N.E.2d 465, 472 (1967) (internal quotation marks omitted)).

    Even if *Patrick Engineering* provided support for Wilmot's arguments, however, Wilmot would be unable to prevail on its equitable estoppel claim. As the Court explained in the previous section, Wilmot's claimed use of the disputed area would violate the Illinois Constitution because it would effect a private use by Wilmot of public property. The court in *Patrick Engineering* upheld a contract for which the municipal body had the "general authority to act" despite "the irregular manner in which extra work was ordered." *Id*. at 1287. The constitutionality of the object of the contract was not at issue in that case. Even if the mechanism through which the District made the deal

10

was, like that in *Patrick Engineering*, closer to compliance with statutory requirements than the District contends, any allowance by the District of Wilmot's private use of the disputed area would be unconstitutional irrespective of a claim of estoppel. "The [Illinois] Constitution is the supreme law, and every citizen is bound to obey it, and every court is bound to enforce its provisions." *People ex rel. Miller v. Hotz*, 327 Ill. 433, 437, 158 N.E.2d 743, 743 (1927); *see also People v. Howard*, 228 Ill. 2d 428, 434-35, 888 N.E.2d 85, 89 (2008) (holding that an official who violates Article VIII § 1(a) can be prosecuted for official misconduct).

Wilmot's unjust enrichment claim is a different matter. Although Wilmot may not be entitled by virtue of contract law to receive what it bargained for, the doctrine of unjust enrichment applies in precisely these circumstances: when, pursuant to an unenforceable contract, one party has performed services that the second party otherwise would receive for free. *See, e.g.*, *Franks v. MKM Oil, Inc.*, No. 10 C 13, 2010 WL 3613983, at *6 (N.D. Ill. Sept. 8, 2010); *Prodomos v. Poulos*, 202 Ill. App. 3d 1024, 1032-33, 560 N.E.2d 942, 949 (1990).

The District argues that Wilmot's unjust enrichment claim is foreclosed by *D.C. Consulting*, in which the court held that "[t]here can be no implied contract" when an "employee of a municipal corporation purports to bind the corporation by contract without prior approval, in violation of an applicable statute." *D.C. Consulting*, 143 Ill. App. 3d at 63, 492 N.E.2d at 1002. For this reason, the District contends, the absence of an authorizing ordinance for the alleged contract renders Wilmot unable to recover under any theory. As the Court has explained, however, the District's authority to contract under section 3a of the Forest Preserve District Act is not qualified by the

requirement of an ordinance. The District has not demonstrated that it lacked the authority to enter the contract under that provision, only that the initial object of the contract – Wilmot's right to use the disputed area – could not be provided consistently with the Illinois Constitution. This does not mean that Wilmot is not entitled to recover for the value of the services that it provided to the District.

For these reasons, the Court dismisses that portion of count two that asserts a claim of equitable estoppel. Wilmot may, however, maintain its claim that the District has been unjustly enriched.

**C.      Count three – prescriptive easement**

Wilmot claims that it is entitled to use the disputed area under the doctrine of prescriptive easement. Via that doctrine, a litigant can assert a right to continue to use property belonging to another that it has "used in an open, uninterrupted, continuous, and exclusive manner for [a statutorily] required period." *City of Des Plaines v. Redella*, 365 Ill. App. 3d 68, 76, 847 N.E.2d 732, 738 (2006).

The District argues that even if Wilmot were able to establish all of the elements of a prescriptive easement, the claim would fail because "the statute of limitations [that must run to create a prescriptive easement] does not run against a municipal corporation in respect to property held for a public use." *Chicago Steel Rule Die & Fabricators Co. v. Malan Const. Co.*, 200 Ill. App. 3d 701, 709, 558 N.E.2d 341, 347 (1990).

Wilmot does not dispute that its prescriptive easement claim fails if the District's use of the disputed area was a public use. It argues, however, that "seeking to eject a neighboring landowner from a small but disputed piece of property" is not a public use.

12

Pl.'s Resp. at 18. This misstates the nature of the "public use" inquiry, which examines whether "the people of the state at large . . . have a general interest in the property at issue" such that "the property is for the general benefit of the people of the state." *Miller v. Metro. Water Reclamation Dist. of Greater Chi.*, 374 Ill. App. 3d 188, 191, 870 N.E.2d 1040, 1042 (2007). Wilmot also appears to dispute that cases such as *Miller*, which examine the public use doctrine with respect to the statute of limitations for adverse possession, provide controlling authority respecting a prescriptive easement. Because, however, Illinois cases applying the public use doctrine to prescriptive easement claims rely on cases about adverse possession, this argument is unavailing. *See, e.g., Chicago Steel*, 200 Ill. App. 3d at 709, 558 N.E.2d at 347 (citing *People ex rel Kennedy v. Goreville*, 154 Ill. App. 3d 1091, 507 N.E.2d 1247 (1987)); *Savoie v. Town of Bourbonnais*, 339 Ill. App. 551, 558, 90 N.E.2d 645, 649 (1950) (citing *Brown v. Trs. of Schs.*, 224 Ill. 184, 79 N.E. 579 (1906)).

"[P]ublic rights or uses are those in which the public has an interest in common with the people of [a] municipality, whereas private rights or uses are those which the inhabitants of a local district enjoy exclusively, and the public has no interest therein." *Savoie*, 339 Ill. App. at 558, 90 N.E.2d at 649. The court in *Savoie* held that "drain[ing] a] public highway and keep[ing] it open for traffic" was "a use from which the public at large benefits." *Id*. The court in *Chicago Steel* found that land a city acquired for redevelopment was taken for public use because "there is no evidence that the city took the property for the special benefits of its inhabitants in particular." *Chicago Steel*, 200 Ill. App. 3d at 711, 558 N.E.2d at 348. By contrast, in *Village of DePue v. Viacom International, Inc.*, 713 F. Supp. 2d 774, 782-84 (C.D. Ill. 2010), the court found that a

13

village's efforts to clear a contaminated site were not efforts to act on behalf of the public, because the village was seeking to maximize its own tax and business revenues and clean its own land.

It is clear that efforts by a forest preserve district to maintain its land are efforts on behalf of the public. The Forest Preserve District Act empowers districts to create preserves "for the purpose of the education, pleasure, and recreation *of the public*" in "unit areas of size and form convenient and desirable *for public use*." 70 ILCS 805/5 (emphasis added). Like the sanitary district at issue in *Miller*, a forest preserve district "is a part of the machinery of government. Its functions are public. The property . . . is public property in the hands of the trustees, as agents for the State, for the purposes designated in the act authorizing its creation." *Miller*, 374 Ill. App. 3d at 192, 870 N.E.2d at 1043 (quoting *Chi & E. Ill. Ry. Co. v. Sanitary Dist. of Bloom Twp.*, 350 Ill. 542, 548, 183 N.E. 585, 585 (1932) (internal quotation marks omitted)). Indeed, the property at issue in *Miller* was leased to a golf course, but the court held that because the golf course was "open to all persons in the state," the property "retain[ed] its public character." *Id*. There is no allegation that the District's property is not open to all residents of Illinois.

Because the District holds its land for a public purpose, the disputed area cannot be subject to a prescriptive easement. The Court therefore dismisses count three.

D.   **Judicial estoppel**

The District raised a new argument in its reply brief, contending that Wilmot's representations in another case in this district, *Ruddy v. Wilmot Mountain*, No. 10 C 7219, should "defeat all counts of its complaint." Def.'s Reply at 2. The Court will

construe this as an assertion of the doctrine of judicial estoppel. The doctrine of judicial estoppel "prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2002). To prevail on a theory of judicial estoppel, a litigant must show that its opponent has successfully made a representation to one tribunal and is attempting to reverse itself before another. *See In re Airadigm Commc'ns, Inc.*, 616 F.3d 642, 662 (7th Cir. 2010).

Wilmot successfully moved to transfer *Ruddy*, a personal injury case, to the Eastern District of Wisconsin on the ground that Wilmot had insufficient contacts with Illinois to render it subject to suit here. The District argues that Wilmot asks in the present case "for a ruling . . . that it has an agreement or other right to use the District's land, which is, indisputably, in Illinois." Def.'s Reply at 3. It contends that Wilmot's allegations in *Ruddy* "that it believed that it was fencing off and using its own property in Wisconsin, and that it never 'purposefully' used Illinois land, defeat its claims that it formed a contract or has a right to use the District's property in Illinois." *Id*.

The District's argument appears to be that for Wilmot to succeed on its claims in this case, it must establish that it knowingly used property in Illinois, which would contradict its contention in *Ruddy* that it had no purposeful contacts with the state. The Court disagrees. In fact, Wilmot alleges in the present case that it constructed a fence on what it believed to be the state line – in other words, it did not believe that it was engaging in any activity in Illinois. In any event, Wilmot has not asserted in this case that it owns any property in Illinois, but only that it has a right to use a portion of the District's property based on the dealings between the parties. Finally, there is no

15

indication that the disputed area had anything to do with the events at issue in *Ruddy* (which took place on a ski slope in Wisconsin). And awareness of Wilmot's claims in this lawsuit would not have altered the outcome of the motion to transfer in *Ruddy,* because the judge in that case denied a motion to reconsider based on Wilmot's allegations in this case. See *Ruddy*, 10 C 7219, dkt. no. 34. For these reasons, the Court rejects the District's contentions that Wilmot's remaining claims are barred by the doctrine of judicial estoppel.

## Conclusion

For the reasons stated above, the Court grants defendant's motion to dismiss [docket no. 13] in part. Counts one and three of plaintiff's complaint are dismissed, as is that portion of count two that asserts a claim for equitable estoppel. The motion is otherwise denied. This case is set for a status hearing on March 29, 2012 at 9:00 a.m., in chambers, to set a schedule for further proceedings and to discuss the possibility of settlement.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: March 20, 2012